[Cite as *Bath v. Rudisill*, 2026-Ohio-3085.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
FAIRFIELD COUNTY, OHIO

| | |
|---|---|
| JASMER S. BATH,<br><br>    Plaintiff - Appellee<br><br>-vs-<br><br>STEVEN RUDISILL, et al.,<br><br>    Defendants - Appellants | Case No. 2026 CA 00016<br><br>Opinion And Judgment Entry<br><br>Appeal from the Fairfield County Court of Common Pleas, Case No. 2024 CV 00577<br><br>Judgment:   Dismissed in part; Affirmed in part<br><br>Date of Judgment Entry: August 11, 2026 |

**BEFORE:** William B. Hoffman; Craig R. Baldwin; David M. Gormley, Judges

**APPEARANCES:** CRAIG J. SPADAFORE, for Plaintiff-Appellee; BRUCE M. BROYLES, for Defendants-Appellants.

*Baldwin, J.*

**{¶1}** The appellant, Steven Rudisill, appeals from the judgment of the Fairfield County Court of Common Pleas granting the appellee, Jasmer S. Bath, restitution of the property on his forcible entry and detainer claim, and from the trial court's order of possession of personal property issued on the appellee's replevin claim.

## STATEMENT OF FACTS AND THE CASE

**{¶2}** Rudisill formerly owned certain real property located in Fairfield County, Ohio (the "Property"). Rudisill also owned certain farm equipment that he kept at the Property (the "Equipment").

**{¶3}** In April of 2018, Bath purchased the Property and the Equipment from Rudisill pursuant to an Agreement for Purchase and Sale of Assets dated April 27, 2018 (the "Purchase

Agreement"). Under the Purchase Agreement, Bath granted Rudisill the right to occupy the Property and to use the Equipment for a term of four years in order to farm the land and operate a farmer's market. In exchange, Rudisill agreed to pay all real estate taxes that became due and owing on the Property during that period.

**{¶4}** Rudisill did not vacate the Property at the expiration of the four-year term and continued to farm the land and use the Equipment. During that period, the condition of the Property gave rise to multiple violations of the Violet Township Zoning Resolutions.

**{¶5}** On July 1, 2023, the parties executed a Short-Term Occupancy Agreement (the "Occupancy Agreement"), under which Bath permitted Rudisill to occupy the Property and use the Equipment through November 30, 2023. In exchange, Rudisill agreed to clean up the Property and to remedy the township zoning violations by removing certain trash, debris, items, and materials on or before September 1, 2023. Rudisill further agreed to pay the rent due on the Property for 2023, in the form of the real estate taxes, and a monthly fee of $150.00 for continued use of the Equipment.

**{¶6}** Rudisill did not vacate the Property at the termination of the Occupancy Agreement on November 30, 2023, did not return the Equipment, and did not complete the agreed clean-up.

**{¶7}** On June 6, 2024, Bath sent Rudisill a Notice of Default, Termination, and Demand to Vacate by certified mail, affording him thirty days to clean up the Property in accordance with the Occupancy Agreement, abate the township zoning violations, return possession of the Equipment, and vacate the Property. Rudisill did not comply.

**{¶8}** On July 8, 2024, Bath served a three-day notice to leave the premises upon Rudisill at his home address and at the Property pursuant to R.C. 1923.04. The notice

identified the grounds for the action as Rudisill's failure to cure township zoning code violations and his unlawful possession and use of the property and machinery after expiration of the lease. Rudisill did not comply.

**{¶9}** The record reflects the following payments. On or about February 5, 2024, Rudisill submitted a check to Bath in the amount of $300.00 for use of the Equipment for December 2023 and January 2024. On or about February 13, 2024, Rudisill submitted Check No. 4088 in the amount of $748.38 toward the real estate taxes due on the Property for the first half of 2023. Both checks preceded the Notice of Default and the three-day notice, and both were cashed.

**{¶10}** On or about July 24, 2024, after the three-day notice was served, Rudisill submitted two additional checks: Check No. 4166 in the amount of $600.00 for use of the Equipment, and Check No. 4165 in the amount of $748.38 toward the real estate taxes due on the Property for the second half of 2023. Both checks were cashed.

**{¶11}** On or about March 24, 2025, Rudisill submitted Check No. 4211 in the amount of $807.29, tendered toward the real estate taxes due on the Property for the first half of 2024. Bath did not cash this check and retained it to be returned to Rudisill.

**{¶12}** On July 22, 2024, Bath filed a complaint asserting three claims: Count One for forcible entry and detainer, seeking restitution of the Property; Count Two for breach of contract, seeking damages arising from Rudisill's breach of the Occupancy Agreement; and Count Three for replevin, seeking possession of twelve pieces of Equipment or, alternatively, damages for their value. The complaint identified the grounds for the forcible entry and detainer claim as Rudisill's failure to vacate the Property at the termination of the Occupancy Agreement, his failure to return the Equipment at that termination, his failure to clean up the

Property in violation of the Occupancy Agreement, and his violations of the Violet Township Zoning Resolutions. The complaint did not identify a failure to remit rent as a ground for the claim.

{¶13} Bath supported the replevin claim with a motion for order of possession of property and an affidavit in replevin pursuant to R.C. 2737.03. A hearing on that motion was held before the Magistrate on August 30, 2024. Rudisill filed his answer on October 8, 2024.

{¶14} On February 13, 2025, the Magistrate issued a decision granting Bath's motion for order of possession, finding that probable cause existed to support the motion and directing Bath to submit a proposed order containing the information set forth in R.C. 2737.08(A)(1) through (5).

{¶15} On February 27, 2025, the trial court issued the Order of Possession. The order did not require Bath to post a bond. It provided that Rudisill could recover the Equipment after it was seized by the Sheriff by filing a bond with the court in the amount of $120,000.00 pursuant to R.C. 2737.11. That same day, Rudisill filed an objection asserting that the Order of Possession would not be effective until Bath posted a bond in twice the value of the Equipment pursuant to R.C. 2737.10. Rudisill filed a further objection to the Sheriff executing upon the Order of Possession on March 27, 2025.

{¶16} On April 3, 2025, a hearing was held before the Magistrate on Count One. The Magistrate found that Bath was the owner of the Property, that Bath had served a notice to vacate the Property, and that Rudisill had violated the terms of the Occupancy Agreement by failing to comply with the clean-up provisions at Sections 2a and 2b. The Magistrate's Decision did not find that Rudisill was in default of the payment of rent, and the corresponding designation on the decision was left unmarked. The Magistrate rendered

judgment in favor of Bath for restitution of the Property plus costs, ordered a writ of restitution, and set a vacate date of May 3, 2025.

**{¶17}** Rudisill filed objections to the Magistrate's Decision on April 16, 2025, arguing that Bath had accepted payment of rent for a future rental period after the three-day notice was served, thereby rendering the notice invalid. On June 26, 2025, the trial court overruled the objections and adopted the Magistrate's Decision, expressly noting that the Magistrate had not found a breach of the rent provisions of the agreement but rather a breach of the provisions requiring Rudisill to clean up the Property.

**{¶18}** On June 27, 2025, Rudisill filed a motion to vacate the June 26, 2025, judgment entry, again asserting that the acceptance of future rental payments waived the three-day notice and deprived the trial court of jurisdiction to proceed. The trial court denied the motion by entry filed October 13, 2025.

**{¶19}** On February 23, 2026, the trial court issued an Order for Writ of Restitution and Execution, directing the Clerk to issue a Writ of Restitution in favor of Bath and directing the Sheriff to execute the same via a Writ of Execution pursuant to R.C. 1923.13(A) and 1923.14(A). The order addressed only Bath's claim for forcible entry and detainer. It did not dispose of Count Two or Count Three of the complaint, and the record contains no entry disposing of either claim.

**{¶20}** Rudisill filed a notice of appeal on March 23, 2026, and raised the following three assignments of error:

**{¶21}** "I. THE TRIAL COURT ERRED IN ALLOWING APPELLEE JASMER BATH TO EXECUTE ON THE ORDER OF POSSESSION WITHOUT POSTING A

BOND IN THE AMOUNT OF $120,000.00 AND INSTEAD REQUIRED APPELLANT STEVE RUDISILL TO POST THE BOND."

{¶22} "II. THE TRIAL COURT ERRED IN GRANTING THE WRIT OF POSSESSION IN LIGHT OF EVIDENCE DEMONSTRATING THAT APPELLANT STEVE RUDISILL PAID RENT FOR FUTURE PERIODS AFTER THE POSTING OF THE 3-DAY NOTICE AND APPELLEE JASMER BATH ACCEPTED THE RENT."

{¶23} "III. THE TRIAL COURT ERRED IN FAILING TO VACATE WRIT OF POSSESSION IN LIGHT OF EVIDENCE DEMONSTRATING THAT APPELLANT STEVE RUDISILL PAID RENT FOR FUTURE PERIODS AFTER THE POSTING OF THE 3-DAY NOTICE AND APPELLEE JASMER BATH ACCEPTED THE RENT."

## I.

{¶24} In his first assignment of error, Rudisill argues that the trial court erred in permitting execution upon the Order of Possession in the absence of Bath posting a bond in twice the approximate value of the Equipment, as required by R.C. 2737.10, and in requiring Rudisill to post a bond of his own before he could recover the Equipment.

### ANALYSIS

{¶25} Before we address the appellant's argument, we must determine whether the order challenged is one from which an appeal may be taken. Under Article IV, Section 3(B)(2) of the Ohio Constitution, a judgment of a trial court may be immediately reviewed by an appellate court only if it constitutes a final order in the action. This Court may entertain only those appeals from final judgments or orders; if an order is not final, an appellate court has no jurisdiction, and the matter must be dismissed. *Gehm v. Timberline Post & Frame*, 2007-

Ohio-607, ¶ 14. An appellate court must raise the question of a final appealable order on its own motion where the parties have not. *In re Estate of Titus*, 2025-Ohio-4798, ¶ 6 (5th Dist.).

**{¶26}** The Order of Possession at issue was issued on Bath's replevin claim under R.C. Chapter 2737. That chapter defines an "order of possession" as "an order issued by a court under this chapter for delivery to the movant of possession of specific personal property pending final judgment in the action." R.C. 2737.01(D). By the terms of the statute, an order of possession is a preliminary determination that operates only until the trial court enters final judgment. That final judgment is separately provided for by R.C. 2737.14, under which the court awards "permanent possession of the property and any damages to the party obtaining the award." An R.C. 2737.03 proceeding is preliminary and is commenced only if the movant wants possession during the pendency of the replevin action. *Hoelscher v. ICS 1 Ltd.*, 2019-Ohio-3304, ¶ 28 (5th Dist.).

**{¶27}** No such final judgment has been entered here. Neither the February 23, 2026, Order for Writ of Restitution and Execution nor any other entry in the record disposes of the replevin claim in Count Three or the breach of contract claim in Count Two. The Order of Possession therefore remains what the statute contemplates it to be: an interim allocation of possession pending final judgment. Replevin under R.C. Chapter 2737 is not subject to the exception that applies to forcible entry and detainer actions, which we discuss below, and the statute governing replevin expressly makes the order of possession interlocutory.

**{¶28}** Nor does the order qualify as a final order under R.C. 2505.02(B)(4). That division renders final an order granting or denying a provisional remedy only where the order in effect determines the action with respect to the provisional remedy and prevents a judgment in the appealing party's favor as to that remedy, and where the appealing party would not be

afforded a meaningful or effective remedy by an appeal following final judgment. R.C. 2505.02(B)(4)(a) and (b). Assuming without deciding that an order of possession under R.C. 2737.07(B) is an order granting a provisional remedy, the first requirement is not satisfied. The Order of Possession does not determine the action with respect to possession of the Equipment or prevent a judgment in Rudisill's favor. Instead, R.C. 2737.11 gives the respondent the right to recover the property by filing a bond with the court, and R.C. 2737.14 leaves the ultimate award of permanent possession and damages to the trial court. The statutory scheme thus contemplates further proceedings on the very question Rudisill seeks to raise, and an appeal following the entry of final judgment under R.C. 2737.14 will afford this Court an opportunity to address it. The Tenth District reached the same conclusion, holding that an order of possession issued on a finding of probable cause neither resolves which party is entitled to permanent possession nor assesses damages, and therefore does not finally determine the action even with respect to the provisional remedy. *Ally Bank v. Bey*, 2020-Ohio-5093, ¶ 10 (10th Dist.).

**{¶29}** Accordingly, we dismiss the appeal as to the first assignment of error for want of a final appealable order.

## II., III.

**{¶30}** In his second and third assignments of error, Rudisill contends that the trial court erred in granting, and in refusing to vacate, the writ of restitution issued on the forcible entry and detainer claim, because Bath accepted payments of rent for future periods after the three-day notice was served and thereby waived the notice. Because the two assignments of error raise the same question, we address them together.

**{¶31}** Our conclusion as to the first assignment of error does not govern the second and third. Forcible entry and detainer under R.C. Chapter 1923 is a special statutory proceeding, and the Supreme Court of Ohio has held that Civ.R. 54(B) is by its nature clearly inapplicable to such proceedings under the authority of Civ.R. 1(C). *Cuyahoga Metro. Hous. Auth. v. Jackson*, 67 Ohio St.2d 129, 131 (1981). The Court reasoned that claims for possession of real property are commonly joined with claims for money damages, and that applying Civ.R. 54(B) would render a possession judgment provisional and unenforceable whenever the trial court had not disposed of the joined claims, a result that would destroy the summary nature of the proceeding. *Id*. A forcible entry and detainer action is accordingly a special statutory proceeding limited to the resolution of the right to present possession of the premises, notwithstanding other pending litigation. *State ex rel. Tri Eagle Fuels, L.L.C. v. Dawson*, 2019-Ohio-2011, ¶ 10; *DNW Props. III, L.L.C. v. Tucker*, 2026-Ohio-1342, ¶ 17 (5th Dist.). The judgment on Bath's forcible entry and detainer claim is therefore a final appealable order, and the second and third assignments of error are properly before us.

## STANDARD OF REVIEW

**{¶32}** Generally, we review the trial court's judgment adopting a magistrate's decision under an abuse of discretion standard. *Butera v. Beesler*, 2023-Ohio-2257, ¶ 19 (11th Dist.), quoting *Barnosky v. Barnosky*, 2022-Ohio-2928, ¶ 12 (11th Dist.). Both parties have briefed this appeal under that standard, and we apply it here. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The standard is deferential and does not permit an appellate court to substitute its judgment for that of the trial court. *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-4459, ¶ 29.

## ANALYSIS

**{¶33}** Proper service of the three-day notice to leave the premises under R.C. 1923.04 is a condition precedent to the commencement of a forcible entry and detainer action. A lessor who waives the notice has never properly commenced the action, and the trial court commits reversible error by reaching the merits. *Shimko v. Marks*, 91 Ohio App.3d 458, 463 (5th Dist. 1993), citing *Associated Estates Corp. v. Bartell*, 24 Ohio App.3d 6, 9 (8th Dist. 1985).

**{¶34}** By accepting future rent payments after serving a notice to vacate, a landlord is deemed to have waived the notice as a matter of law, because such acceptance is inconsistent with the notice. *Bartell* at 9; *King v. Dolton*, 2003-Ohio-2423, ¶ 11 (9th Dist.).

**{¶35}** As the Ninth District has explained, when a landlord accepts a rent check for a period following the date of acceptance, he signals a willingness to permit the tenant to remain through that period, and that willingness is inconsistent with a notice to vacate. The inconsistency does not extend to circumstances in which rent is accepted for obligations already incurred. *Dolton* at ¶ 12. A landlord accordingly does not waive the notice to vacate where, during the pendency of the suit, the landlord accepts rent from a tenant in occupancy for liability already incurred. *Bartell* at 9. The distinction is therefore temporal: what matters is the period to which the payment is directed, not the date on which it happens to be tendered.

**{¶36}** Whether a lessor has waived the notice to vacate is a question of fact. *Shimko*, 91 Ohio App.3d at 463; *Bartell*, 24 Ohio App.3d at 9. Where a landlord retains a check for evidentiary purposes and does not cash it, there is no acceptance. *Bartell*, 24 Ohio App.3d at 9.

**{¶37}** Applying that framework, we cannot say the trial court's resolution of the waiver question was unreasonable, arbitrary, or unconscionable.

**{¶38}** Rudisill tendered two payments in February of 2024. The first was a $300.00 payment for use of the Equipment during December 2023 and January 2024. The second was Check No. 4088 in the amount of $748.38 toward the real estate taxes for the first half of 2023. Both payments were directed to periods that had already elapsed, and both were tendered before the three-day notice was served on July 8, 2024. Neither payment is capable of waiving a notice that had not yet been given.

**{¶39}** Of the two checks tendered on July 24, 2024, after the notice was served, Check No. 4165 in the amount of $748.38 was directed to the real estate taxes due on the Property for the second half of 2023, a period that had closed on December 31, 2023. Acceptance of that payment was acceptance for a liability already incurred and was not inconsistent with the notice to leave. *Bartell*, 24 Ohio App.3d at 9.

**{¶40}** Check No. 4166 in the amount of $600.00 presents a close question. The check bears a memorandum that appears to reference equipment rent for February through July. Rudisill offered a competing reading of the memorandum. The trial court was entitled to credit Bath's evidence that, notwithstanding the notation appearing on the check, the $600.00 payment represented four months of accrued equipment charges through May 2024. On this record, sound reasoning supports that resolution, and it is not our role to read the evidence differently than the trial court did. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**{¶41}** As to Check No. 4211 in the amount of $807.29, tendered on or about March 24, 2025, toward the real estate taxes for the first half of 2024, the evidence establishes that Bath did not cash the check and retained it to be returned to Rudisill. Retention of a check for evidentiary purposes, without cashing it, is not an acceptance. *Bartell*, 24 Ohio App.3d at 9,

citing *Booher v. Lowe*, 82 Ohio App. 392, 394 (2d Dist. 1947). That payment accordingly cannot support a finding of waiver.

{¶42} There is a further and independent basis in the record for the trial court's judgment. Bath's forcible entry and detainer claim was not predicated on any failure to remit rent. The complaint identified Rudisill's failure to vacate, his failure to return the Equipment, his failure to clean up the Property, and his zoning violations. The three-day notice identified the failure to cure township zoning code violations and the unlawful possession and use of the property and machinery after expiration of the lease. The Magistrate's Decision granted judgment on the specific basis that Rudisill violated the terms of the Occupancy Agreement by failing to comply with the clean-up provisions at Sections 2a and 2b and did not find that Rudisill was in default of the payment of rent. The trial court expressly relied upon that distinction in overruling Rudisill's objections. The trial court could reasonably conclude on these facts that Bath's conduct in accepting payments directed to closed periods was not inconsistent with a notice to leave grounded in obligations wholly unrelated to the payment of rent.

{¶43} Accordingly, Rudisill's second and third assignments of error are overruled.

## CONCLUSION

{¶44} Based upon the foregoing, the appeal is dismissed as to the first assignment of error for want of a final appealable order. The judgment of the Fairfield County Court of Common Pleas is affirmed as to the second and third assignments of error.

{¶45} Costs to the appellant.

By: Baldwin, J.

Hoffman, P.J. and

Gormley, J. concur.